## EDWARD RICHMOND *vs.* WILLIAM GRAY, JR.

A court of equity will not compel one who has agreed to purchase land to accept a title so doubtful that it may be exposed to litigation.

A sale of a minor's real estate by a guardian is void, if no deed thereof is delivered or exe-cuted until after the expiration of a year from the date of the license, and no money therefor has been paid to the guardian or accounted for by him in the probate court.

A decree for specific performance of an agreement to purchase land will not be ordered, if the vendor could not make a good title thereto at the time when, by the terms of the agreement, he was to deliver a deed thereof, or for more than six months after the vendee declined to accept a deed on account of a defect in the title; although he may be able to do so at the time when the decree is sought for, or the bill filed.

If one who has agreed to purchase land enters into possession thereof by consent of the vendor, and makes changes therein, by removing a cellar wall, cutting trees and exer-cising other acts of ownership, before the delivery of a deed, he will not for these reasons be compelled by a court of equity to accept a defective title, if he abandons the posses-sion as soon as he learns of the defect.

BILL IN EQUITY to enforce specific performance of a contract, a memorandum of which was made by the defendant in his own handwriting, to purchase of the plaintiff the " Hermitage Lot " in Dorchester, then owned by the plaintiff's wife. The contract was as follows : " 1st. A deed is to be drawn up con-veying the land described in the accompanying papers to Wil-liam Gray, Jr. Title to be examined. 2d. A mortgage of $5000 for five years on house and land already mortgaged to the M. H. Life Ins. Co., for $10,000, and on the land above

conveyed, which is unincumbered. Interest, five per cent, payable semi-annually. 3d. A mortgage of $5000 for ten years on land above conveyed; any part or the whole of this mortgage to be released on payment of a proportional part of the $5000. Interest, five per cent., payable semi-annually. The right ot paying any part or the whole of either of the above mortgages at any time, with interest up to that time, is reserved by W. G. Jr., not less than $1000. The mortgages to be made out to Mary E. Richmond; notes to own order. Mortgages and notes to be dated July 1st 1859. Mortgages to be made power of sale."

At the hearing in this court, before *Chapman,* J., the case was reserved for determination by the whole court. The facts are stated in the opinion.

CHAPMAN, J. Assuming that there is a sufficient memorandum of the contract within the statute of frauds, the court are of opinion that the bill cannot be sustained, for want of ability in the plaintiff to make seasonably such a title as the defendant should be compelled to accept.

The contract was made June 25, 1859. The plaintiff then had no title to the land, but his wife had the title in herself, to her sole and separate use. It was part of the agreement expressed in the memorandum that the title was to be examined. This implies that the purchaser was not bound to take the land unless he found a good record title. For an examination could have no other object than. to make this point satisfactory to the purchaser; and a defective record title is not marketable.

The attorney employed to examine the title reported it defective as to six undivided twenty-fifth parts. This portion of the land had belonged to Miss Howard, a minor under guardianship. Her guardian had obtained a license to sell the land, on the 2d of May 1857. By statute, this license remained in force only for a year. Rev. Sts. *c.* 72, § 13. He conveyed it to the grantor of the plaintiff's wife; but his deed, though dated July 1, 1857, was not acknowledged until July 3, 1858, and was not recorded until July 6, 1858. An examination of the record would therefore suggest a doubt whether the deed had been

delivered within a year from the date of the license.  On inquiry as to the fact, it appeared that it was not actually delivered till the day it was recorded.

There was still another inquiry open.  The *St.* of 1840, *c.* 97, provides that the sale shall be valid, when drawn in question by any person claiming under the ward, if the license, bond, oath and notice have been according to law, and the price for which the land has been bid off at auction has been paid by a *bona fide* purchaser, and duly accounted for.  Pursuing his inquiry on that subject, the attorney found that no account of the sale had been rendered in the probate court; and that in fact no money had been paid to the guardian.  It had been a transaction among friends, who had entire confidence in each other; and the requisite forms of law had been disregarded. The sale was therefore void, and the title still remained in the minor.  *Macy* v. *Raymond,* 9 Pick. 285.  On coming of age, she might claim the land; or, in case of her death or marriage, other persons would acquire rights in it.

On this subject, courts of equity hold a vendor to great strictness.  Formerly the practice was to decide for or against the validity of the title; and compel the purchaser to take it as good, or dismiss the bill because it was held bad.  But this rule was objected to as absurd and unjust; and it has long since been changed.  A court of equity will not now compel a purchaser to accept a title which is so doubtful that it may expose him to litigation, though the court may believe it to be good.  For the decree of the court is *in personam,* and not *in rem ;* and it binds only those who are parties to the suit, and those claiming through them; and in no way decides the question as against the rest of the world.  If therefore there be a reasonable chance that some third person may raise a question against the owner of the estate, after the completion of the contract, the court will not compel him to accept it.  Fry on Contracts, § 573, *&* seq. and cases there cited.  *Pyrke* v. *Waddingham,* 10 Hare, 1.  In this case, the title was not merely doubtful, but absolutely defective.

About the middle of August 1859, the plaintiff called on the

defendant and was informed of the defect. The defendant then made to him two proposals. One was to let the matter lie as it was till Miss Howard should become of age, which would be n a few months; the other, that the plaintiff should procure a bond from W. Pickering, her guardian, that she should make the title good after she became of age. The plaintiff executed the notes that were to be given, and accepted the latter proposal, but failed to obtain the bond. The matter was left in this situation until the 26th of September, when the defendant verbally notified the plaintiff that he should not take the deed. On the 3d of October, he gave a similar notice in writing. On the 20th of October the plaintiff's wife died, so that it became impossible to obtain a deed from him. Her title descended to her heirs, subject to her debts if any existed; and whether there were any, could not be known for a long period. It appears that her father was her sole heir, and conveyed his title to the plaintiff, on the 7th of November 1859, by quitclaim. Miss Howard became of age, and conveyed her title to the plaintiff, on the 27th of April 1860. He then, for the first time, had a perfect title, subject only to the debts of his wife if any such existed. The liability to such debts would continue for a period of two years after letters of administration issued upon her estate. He filed his bill June 12, 1860.

The fact that the defendant entered into possession and occupied the land, and made several important changes in it, by removing a cellar wall, cutting trees, and doing other similar acts, cannot aid the plaintiff; for the possession was not taken under the title, but, by agreement of the parties, the defendant was to enter before the title was examined. As soon as the defect was known, he abandoned the possession; and any injury which may have been done by him cannot be recovered by the plaintiff in this proceeding.

But it is contended that time is not material; that the case may now be sent to a master to ascertain whether the estate is subject to any debts of Mrs. Richmond; that a bond of indemnity may be given against debts, and that the plaintiff may thus be brought within the rule, that a vendor is entitled to a decree

for specific performance if he can make a good title at the time of the decree, though he could not have made one before.

There are many cases in which this doctrine is discussed. It is not necessary to refer to all of them. In *Langford* v. *Pitt*, 2 P. W. 631, it is stated broadly that it is sufficient if the party has a good title at the time of the decree; the direction of the court being, in all these cases, to inquire whether the seller can make a title, and not whether he could have done so at the time of executing the agreement. The courts were formerly inclined to aid the party in equity, on the ground that time is not material. But in *Lloyd* v. *Collett*, 4 Bro. C. C. 469, the Lord Chancellor speaks of this as a singular head of equity; and remarks, in substance, that while the essentials of a contract are the same at law as in equity, and while in law a contract can only be enforced according to its terms, the claim of the plaintiff is that an equity arises out of his own neglect.

The doctrine is certainly an anomaly. It amounts to this: that a party who commences a suit with no existing cause of action may acquire a claim to a decree by the delay of the cause in court. And there is danger that it may amount to making a contract for the parties into which they never entered. The later doctrine in respect to performance is, that time is generally regarded as material. *Harrington* v. *Wheeler*, 4 Ves. 686. This was also admitted by counsel in *Wynn* v. *Morgan*, 7 Ves. 202. In the latter case, the doctrine that a party may be entitled to a decree on making a good title at the time is very carefully stated. The marginal note is as follows: " Where the time at which the contract was to be executed is not material, and there is no unreasonable delay, the vendor, though not having a good title at the time the contract was to be executed, nor when the bill was filed, but being able to make a good title at the hearing, is entitled to a specific performance." In that case, the defendant had not objected in his answer that time was material; the defect of title was one that required to be remedied by an act of parliament, and the act was procured in three months. Sir William Grant said: " Deciding against the plaintiff, I should be under the necessity of saying,

3*

if any flaw existing at the time the contract was to be carried into execution can be pointed out, it cannot be enforced. That would be too strong. It is not necessary to infer from that, that at the distance of years the vendor may come and say he can now make a title and ask a specific performance. Each case must depend upon its circumstances. All I say is, there are no circumstances in this case to prevent the plaintiff from having a specific performance."

In *Hoggart* v. *Scott*, 1 Russ. & Mylne, 293, and Tamlyn, 500, the plaintiff had a decree by showing a good title at the hearing. It was said : " The defendant, if he had thought fit, might have declined the contract as soon as he discovered that the plaintiff had no title, and he was not bound to wait till they had acquired a title ; but he not having taken that course, it is enough that at the hearing a good title can be made.". The proceedings to inquire whether a good title could be made had been taken in court without any objection from the defendant.

Both these cases assume that the vendee might, by insisting on the objection seasonably, have made a successful defence. In the present case, the objection was seasonably made. On the 26th of September 1859, the defendant verbally declined to take the deed ; and on the 3d of October he sent to the plaintiff a letter, declining to take the land, on account of the defect of title.

The doctrine is recognized and discussed in several American cases ; and some of them state it with very little qualification. Most of them are collected in 2 Dan. Ch. Pr. 1195, *note.* Also in note to *Rose* v. *Calland*, 5 Ves. 189, and *Seton* v. *Slade*, 3 White & Tudor's Lead. Cas. in Eq. (Amer. ed.) 60–74. In *Hepburn* v. *Auld*, 5 Cranch, 279, Livingston, J., makes the following remarks : " It is said that by the English authorities the lapse of time may be disregarded in equity, in decreeing a specific performance of a contract for land. But there is a vast difference between contracts for land in that country and this. There the lands have a known, fixed and stable value. Here the price is continually fluctuating and uncertain. A single day often makes a great difference; and in almost every case time is a very material circumstance."

To these remarks, which have great practical force, it may be added that at the present day business is done with such comparative speed, and changes of property and in places of business are so frequent, that it would in most cases be inequitable to compel a party to accept property after any considerable delay, or to compel him to keep his funds unemployed through fear that the court may order him to accept it, on terms of delay that he never has assented to. The qualifications of the doctrine stated in *Wynn* v. *Morgan* should therefore be adhered to strictly.

In this case, the court cannot see that it would be equitable to compel the defendant to accept the conveyance, or to make any inquiry into the plaintiff's present ability to make a clear title, as more than half a year elapsed after the notice that the defendant would not accept the title, before the plaintiff was able to make a title that would be good, even with the addition of a bond of indemnity against debts.

*Bill dismissed with costs.*

*L. Shaw*, (*J. J. Clarke* with him), for the plaintiff. The guardian's sale was valid. Rev. Sts. *c.* 72, § 20. *St.* 1840, *c.* 97. Gen. Sts. *c.* 102, § 47. Before filing his bill, the plaintiff tendered to the defendant a perfect title ; and courts of equity will decree specific performance, if a good title can be made at any time before final decree. 3 White & Tudor's Lead. Cas. in Eq. (Amer. ed.) 60–74. 2 Dan. Ch. Pr. 1195. *Hepburn* v. *Auld*, 5 Cranch, 262. *Hepburn* v. *Dunlop*, 1 Wheat. 179. *Seymour* v. *Delancy*, 3 Cow. 445, 519, 535. *Clute* v. *Robison*, 2 Johns 595, 614.

*C. A. Welch*, for the defendant.